**Ralph Nathaniel MILLS, Plaintiff-Appellant,**

v.

**Louie WAINWRIGHT, Director, Defendant-Appellee.**

**No. 27017.**

United States Court of Appeals
Fifth Circuit.

Sept. 10, 1969.

Robert L. Koeppel, Public Defender Eleventh Judicial Circuit, and Robert L. Parks, Special Asst. Public Defender, Miami, Fla., for appellant.

Earl Faircloth, Atty. Gen. of Florida, Tallahassee, Fla., Arden Siegendorf, Harold Mendelow, Asst. Atty. Gen., Miami, Fla., for appellee.

Before WISDOM and MORGAN, Circuit Judges, and DAVIS,* Judge of the U. S. Court of Claims.

LEWIS R. MORGAN, Circuit Judge:

This is an appeal from a denial of a writ of habeas corpus filed in the United States District Court for the Southern District of Florida. The petitioner was convicted of the crime of robbery and the crime of breaking and entering a dwelling without a dangerous weapon with intent to commit robbery and sentenced by the State Court, sitting without a jury, to a term of fifteen years imprisonment. After exhaustion of state remedies, this action was entered in the United States District Court, that Court ruling in favor of the respondent Wainwright in an extensive oral determination which was incorporated by reference in the Findings of Fact and Conclusions of Law.

The principal facts under consideration are acquiesced in by both parties and involve two separate crimes which transpired approximately 20 days apart in the same locality. On the morning of February 1, 1964, Mary Davis, the State's complaining witness, was awakened from her sleep by a loud thumping on the bedroom door of her home. The beating on her door was accompanied by a voice demanding that she give up her money or

be killed. Miss Davis got out of bed, went to the bedroom door, and after apparently some brief conversation, during which the door was open only some four inches, slipped her change purse, containing nine dollars, through the cracked door to an unseen robber. Next, the robber ordered Miss Davis to put a cloth over her face and to return to the bed, at which time he raped her. The witness never saw her assailant's face. It was not until February 24th or 25th that Miss Davis, in a police line-up, identified the voice of the petitioner, Ralph N. Mills, as being the same which she had heard at her bedroom door. The same night as the commission of the crime a routine investigation was conducted. Certain fingerprints were found and it was later determined that this compared with a palm print of Mills taken while he was being detained for vagrancy.

The second offense occurred early in the morning of February 22, 1964. Dorina Davis, the mother of the complaining witness, who lived across the street from her, was awakened by someone standing over her bed, instructing her to remain silent. Mrs. Davis testified that she awoke her husband and turned on the lights, whereupon the individual walked from the room. However, Mrs. Davis could make no positive identification of the face of this individual, and could only describe to the police the type of clothing worn by him and the shape of the man. Mrs. Davis further testified that when the petitioner was returned to her home later that morning by the arresting officer, her only means of identification was the similarity of physical size and clothing which he wore.

The petitioner Mills testified that he arrived at the Blue Canyon Drive-In on the evening of February 21st, shortly before midnight, and remained there until his arrest in the early hours of February 22nd. A conflict exists between the testimony of the arresting officer and Mills as to when Mills was arrested for

---

* Judge Oscar H. Davis, sitting by designation.

vagrancy. The officer testified that the arrest occurred at the drive-in restaurant, after certain questioning of petitioner as to where he was that night and where he worked. Appellant Mills testified that the officer did not tell him that he was under arrest for vagrancy until subsequent to his return to the scene of the breaking and entering. However, there is no dispute that Mills was arrested for vagrancy under Florida Statutes § 856.02, F.S.A. Upon arrival at the scene of the breaking and entering, no positive identification was made by Mrs. Davis nor by her daughter, Mary Davis, and Mills was taken to jail and booked by the officer for vagrancy. At the jail, after a questioning by police officers, Mills was fingerprinted. Later that same morning Mills was informed that he was being held for the crimes committed against Mary Davis on February 1, 1964, based upon a comparison of fingerprints. The state trial judge allowed this comparison to be made at the trial, after denying the petitioner's motion to suppress this evidence.[1]

Appellant Mills outlines several grounds upon which he levies a constitutional attack. The first concerns the constitutionality of the Florida vagrancy statute, i. e., Florida Statutes § 856.02, F.S.A.[2] However, this point is not essentially before the Court in that it is admitted that the charge of vagrancy upon which Mills was initially arrested and "booked" was not a valid charge and not the statute under which he was convicted. Therefore, a determination of this question is not necessitated. Fernandez v. Klinger, 346 F.2d 210 (9 Cir., 1965). It would be more appropriate to analyze this statute in light of the United States Constitution in a case which directly involved it. Additionally, the question of probable cause as to the vagrancy arrest is moot by the admission by both parties and acceptance by the lower court that no probable cause was existent at the time of Mills' arrest as a vagrant.[3]

Accordingly, the issues are narrowed to one upon which this Court agrees that some discussion would be valuable, and in determining this question, we will be in effect controlling the outcome of this appeal. Mills urges that his arrest on vagrancy charges was a sham and fraud that was executed in hopes of discovering evidence that would incriminate him as to the crime of breaking and entering. Appellee Wainwright defends that, although probable cause was lacking for a vagrancy arrest, there existed at the time of the arrest probable cause sufficient to involve Mills in the breaking and entering of Dorina Davis' home. Developing his reasoning in this vein, the respondent argues that since there was probable

1. Appellant Mills was not indicted for either the crime of rape as against Mary Davis, or the crime perpetrated against Dorina Davis.

2. *Florida Statutes* § 856.02:
   "Rogues and vagabonds, idle or dissolute persons who go about begging, common gamblers, persons who use juggling, or unlawful games or plays, common pipers and fiddlers, common drunkards, common night walkers, thieves, pilferers, traders in stolen property, lewd, wanton and lascivious persons, keepers of gambling places, common railers, and brawlers, persons who neglect their calling or employment, or are without reasonably continuous employment or regular income and who have not sufficient property to sustain them, and misspend what they earn without providing for themselves or the support of their families, persons wandering or strolling around from place to place without any lawful purpose or object, habitual loafers, idle and disorderly persons, persons neglecting all lawful business and habitually spending their time by frequenting houses of ill fame, gaming houses or tippling shops, persons able to work but habitually living upon the earnings of their wives or minor children, and all able bodied male persons over the age of eighteen years who are without means of support and remain in idleness, shall be deemed vagrants, and upon conviction shall be subject to the penalty provided in § 856.03."

3. *Findings of Fact (R. 281):*
   10. The respondent admitted at the time of hearing in this cause that there was no factual basis for a "vagrancy" arrest. The petitioner was "booked" and detained on "vagrancy".

cause for arrest, it was immaterial that Mills was "booked" on a vagrancy offense.

First, the Court is of the opinion that it is unnecessary to consider whether appellant Mills could properly have been arrested for breaking and entering, and will not decide this issue. However, assuming *arguendo* that probable cause for the breaking and entering arrest did exist, we are convinced that the case should be reversed in accord with the discussion below.

The evil that exists in this case and the one upon which we must reverse is that, without doubt, the arrest on vagrancy was simply a means employed by the police to discover evidence to further connect the petitioner with the breaking and entering offense, i. e., an investigatory tactic. In fact, it was while Mills was being detained on the vagrancy offense that fingerprints were taken that connected him with the crime of which he was later convicted. There is no question that the vagrancy arrest was a sham. Respondent tacitly admits this, but argues that what exists here is simply a mis-terming of offenses since probable cause was present for an arrest on breaking and entering. We cannot accept respondent's contentions. However, we want it well understood that when a crime under which the arrest is made and a crime for which probable cause exists are in some fashion related, then there is no question but that there is a valid arrest. Ralph v. Pepersack, 335 F.2d 128 (4 Cir., 1964); Bell v. United States, 102 U.S.App.D.C. 383, 254 F.2d 82 (1958). In *Ralph,* supra, the Court summarized the law to be as follows:

"To make constitutional questions turn on the term chosen by police officers to describe their activity—officers who are accustomed to the vernacular of the police station and unschooled in the accepted constitutional vocabulary —is to engage in a futile and unwarranted exercise in semantics."

The function of the Court in this situation is to determine if the arrest was merely a sham or fraud wholly unrelated to the crime for which probable cause existed to arrest the individual. Staples v. United States, 320 F.2d 817 (5 Cir., 1963); Collins v. United States, 289 F. 2d 129 (5 Cir., 1961). The facts foreclose any other conclusion but that Mills' arrest for vagrancy was illegal and unrelated to any offense of which there was probable cause to take him into custody. However, it must be emphasized that each case must be examined in light of the peculiar facts surrounding the arrest and that our determination in this appeal is limited to the singular circumstances herein presented.

In that the arrest was illegal, it is without question that the fingerprints obtained during the illegal detention were inadmissible, and to allow them into evidence during the trial was reversible error. Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Collins v. Beto, 348 F.2d 823 (5 Cir.1965); Bynum v. United States, 104 U.S.App.D.C. 368, 262 F.2d 465 (1958); Zirpolo v. State, 168 So.2d 681 (Fla.App., 1964).[4]

Reversed.

4. In the recent case of Davis v. Mississippi, the United States Supreme Court was confronted with a problem of a kindred nature. After a woman was allegedly raped, she described her assailant as a Negro youth, and the police found some fingerprints on the window through which the assailant had apparently entered the home. The defendant and several other Negro youths were taken to police headquarters, where they were questioned briefly, and were finger- printed. Several days later, the defendant was jailed and was fingerprinted again, and these fingerprints were found to match those on the window of the victim's home. The State conceded on oral argument in the U. S. Supreme Court that there was neither a warrant nor probable cause for the detentions during which the fingerprints were obtained. Therefore, the Supreme Court reversed, holding that the fingerprints were inadmissible into evidence.