# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 26, 2019

Lyle W. Cayce
Clerk

No. 17-40597

BLANCA ARIZMENDI,

　　　　Plaintiff - Appellee

v.

PATRICK GABBERT, Individually and in his official capacity as Criminal Investigator,

　　　　Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, SOUTHWICK, and COSTA, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

　　Blanca Arizmendi teaches high school French in Brownsville, Texas. Patrick Gabbert, the school district's criminal investigator, swore out an affidavit in support of a warrant for the arrest of Arizmendi for allegedly communicating a false report. Arizmendi now sues Gabbert for false arrest under 42 U.S.C. § 1983, contending that Gabbert knowingly or recklessly misstated material facts in the affidavit. Gabbert argues that he is entitled to summary judgment because even if he made material false allegations in his affidavit, the allegations also established probable cause to arrest Arizmendi for a different offense than the one for which he sought a warrant. We conclude

No. 17-40597

that the validity of the arrest could not be saved by facts stated in the warrant sufficient to establish probable cause for a different charge from that sought in the warrant, but Gabbert is entitled to qualified immunity because this was not clearly established at the time of his conduct. We will therefore reverse the district court's denial of Gabbert's motion for summary judgment.

## I

The arrest stemmed from a multi-year investigation into a high school "grade change form." Arizmendi taught the school principal's niece. She alleges that beginning in January 2013, the principal and the student's mother began pressuring her to raise the student's grade. A later review of the student's grades found that a grade change form—appearing to have been completed and signed by Arizmendi—had been submitted to raise the student's grade considerably in Arizmendi's class, tying her for the second-highest GPA in her year. Arizmendi maintains that she "never authorized, accepted, [ ]adopted . . . . [or] signed any grade change form."

On June 14, 2013, Arizmendi filed an administrative grievance form alleging that the school principal forged Arizmendi's signature, falsified records, and illegally changed his niece's grade. An unknown source leaked this information to the local media, which covered the issue and the resulting controversy.

On request by the school district's director of human resources in July 2013, Gabbert began investigating whether someone had illegally tampered with government records, as prohibited by Texas Penal Code § 37.10. As part of his investigation, he seized documents and computers from the school. He also interviewed Arizmendi on September 24, 2013. According to his case notes, when he showed Arizmendi the original grade change form, Arizmendi stated that she had never signed the form and her signature had been forged. A few

days later, Arizmendi submitted a sworn statement to Gabbert reiterating these statements.

In December 2013, Gabbert sent the grade change form and samples of Arizmendi's handwriting to the Texas Department of Public Safety Crime Lab. The lab requested additional handwriting samples and ultimately issued a report stating that Arizmendi's signature on the form was legitimate. Upon receiving this information, Gabbert "reclassified" his investigation to one involving whether Arizmendi had filed a false report in violation of Texas Penal Code § 42.06. Section 42.06, titled "False Alarm or Report," states that "[a] person commits an offense if he knowingly initiates, communicates or circulates a report of a present, past, or future bombing, fire, offense, or other emergency that he knows is false or baseless and that would ordinarily . . . cause action by an official or volunteer agency organized to deal with emergencies; . . . place a person in fear of imminent serious bodily injury; or . . . prevent or interrupt the occupation of a building, room, place of assembly, place to which the public has access, or aircraft, automobile, or other mode of conveyance." "False alarm or report" is a Class A misdemeanor punishable by up to a year in jail.

Gabbert submitted an affidavit seeking an arrest warrant for Arizmendi "for the offense of False Report, a Class A misdemeanor." He stated that "on or about" February 11, 2013, Arizmendi "intentionally and knowingly [c]omitt[ed] the offense of False Report . . . by initiating and communicating a report that [she] knew was 'false and baseless' and causing the reaction of Law Enforcement to initiate an investigation into the allegation of [ ]Tampering with Governmental Records (school records)." He also stated in the affidavit that on September 24, 2013, Arizmendi told him that her signature had been forged on the grade change form, and the Public Safety Crime Lab had later "determin[ed] that Blanca Arizmendi signed [her own] signature" on the form.

No. 17-40597

In sum, Gabbert swore that Arizmendi had "circulated a report that was false and baseless which in turn caused [school district police investigators] to seize several public school computers and documents for forensic reviews."

Upon approval of the warrant for Arizmendi's arrest for the crime of "false report" committed on February 11, 2013,[1] Gabbert arrested Arizmendi. She was processed into jail and released the same day. Six months later, the District Attorney's Office dismissed the charges as barred by the applicable two-year statute of limitations.

Arizmendi then sued Gabbert for false arrest, alleging that he "knowingly and intentionally submitted an affidavit for an arrest warrant that contained false and misleading information in order to manipulate the Magistrate Judge" into issuing the warrant.[2] Gabbert moved for summary judgment, invoking qualified immunity. The district court found a triable issue of material fact as to whether Gabbert submitted a false statement in his warrant affidavit with knowing or reckless disregard for the truth; it therefore denied him qualified immunity on Arizmendi's false arrest claim. Gabbert appeals.

## II

"Summary judgment is required if the movant establishes that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law."[3] When a public official pleads a qualified immunity defense,

---

[1] The warrant authorized Arizmendi's arrest for committing the offense of "false report" on February 11, 2013. It did not identify the specific section number under which Arizmendi was to be arrested.

[2] Arizmendi initially sued the school district in addition to Gabbert and included claims for several other constitutional violations. The district court granted summary judgment to the defendants on every claim except the § 1983 false arrest claim against Gabbert, including Arizmendi's claims for malicious prosecution, First Amendment retaliation, and conspiracy. Arizmendi does not cross-appeal the denial of summary judgment on those claims.

[3] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing Fed. R. Civ. P. 56(c)).

4

No. 17-40597

"[t]he plaintiff bears the burden of negating qualified immunity, but all inferences are drawn in [the plaintiff's] favor."[4]

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal."[5] It "protects all but the plainly incompetent or those who knowingly violate the law," and applies "unless existing precedent . . . placed the statutory or constitutional question *beyond debate*."[6] "To overcome an official's qualified immunity defense, a plaintiff must show that the evidence, viewed in the light most favorable to him, is sufficient to establish a genuine dispute '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'"[7]

"Although a denial of summary judgment is typically unappealable, defendants have a *limited* ability to appeal a denial of qualified immunity under the collateral order doctrine."[8] We have jurisdiction over such appeals only "to the extent that the district court's order turns on an issue of law."[9] In other words, we may "decide whether the factual disputes are material . . . [and review] the district court's legal analysis as it pertains to qualified immunity," but may not "review the genuineness of any factual disputes."[10] "An officer challenges materiality [by contending] that taking *all* the plaintiff's factual allegations as true[,] no violation of a clearly established right was shown."[11]

---

[4] *Id.* (citations omitted).

[5] *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc).

[6] *Id.* at 371 (internal quotation marks omitted) (emphasis in original).

[7] *Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 469 (5th Cir. 2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)) (internal quotation marks omitted).

[8] *Id.* at 467 (emphasis in original).

[9] *Id.* at 467–68 (quoting *Kovacic v. Villareal*, 628 F.3d 209, 211 (5th Cir. 2010)).

[10] *Id.* at 468 (quoting *Wyatt v. Fletcher*, 718 F.3d 496, 502 (5th Cir. 2013), and *Kovacic*, 628 F.3d at 211 n.1).

[11] *Winfrey v. Pikett*, 872 F.3d 640, 643–44 (5th Cir. 2017) (internal quotation marks omitted) (emphasis in original).

No. 17-40597

## III

Arizmendi argues that she has raised a triable factual dispute over whether Gabbert violated her Fourth Amendment rights. She contends that once false statements are excised from Gabbert's warrant affidavit, it did not support probable cause for the offense for which she was arrested.

## A

The Fourth Amendment guarantees "the right of the people to be secure in their persons . . . against unreasonable searches and seizures . . . and [that] no warrants shall issue, but upon probable cause."[12] A constitutional claim for false arrest, which Arizmendi brings through the vehicle of § 1983, "requires a showing of no probable cause."[13] Probable cause is established by "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."[14]

In general, "[i]t is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party."[15] There is a qualification: the initiating party may still be liable for false arrest "if the plaintiff shows that the 'deliberations of the intermediary were in some way tainted by the actions of the defendant.'"[16] Chiefly relevant here, thirty-five years before Gabbert obtained his warrant, *Franks v. Delaware* established that even if an independent magistrate approves a warrant application, "a defendant's Fourth Amendment

---

[12] U.S. Const. amend. IV.

[13] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009).

[14] *Id.* (quoting *Piazza v. Mayne*, 217 F.3d 239, 245–46 (5th Cir. 2000)).

[15] *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017).

[16] *Id.* (quoting *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009)).

No. 17-40597

rights are violated if (1) the affiant, in support of the warrant, includes 'a false statement knowingly and intentionally, or with reckless disregard for the truth,' and (2) the allegedly false statement is necessary to the finding of probable cause."[17]

## B

Arizmendi contends that even though an independent magistrate approved the arrest warrant, Gabbert is liable for false arrest because he made intentional or reckless misrepresentations in his warrant affidavit. Specifically, she contests two statements Gabbert swore to in his affidavit: that Arizmendi "initat[ed] and communicat[ed] a report that [she] knew was 'false and baseless'" on February 11, 2013, causing law enforcement to "initiate an investigation" into the grade change form, and that Arizmendi "circulated a report that was false and baseless which in turn caused [school district] police investigators to seize several public school computers and documents for forensic reviews."

The district court found a genuine factual dispute over whether Gabbert intentionally or recklessly submitted false statements in his affidavit. It observed that while Arizmendi filed an internal grievance form on June 14, 2013, Gabbert instead alleged that Arizmendi initiated and communicated a "report" on February 11, 2013, that caused law enforcement action including the confiscation of files and computers. The district court ultimately found that media attention spurred Gabbert's investigation, not any action taken by Arizmendi. As for Gabbert's mental state, the court observed that "Gabbert may have simply been mistaken when he submitted the warrant affidavit to

---

[17] *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018), *on petition for rehearing* (quoting *Franks v. Delaware*, 438 U.S. 154, 155–56, 165 (1978)); *see Hale v. Fish*, 899 F.2d 390, 400–02 (5th Cir. 1990) (applying *Franks* to a § 1983 claim for arrest without probable cause).

the magistrate judge, but the mix-up may have been purposeful, or a product of reckless disregard." Limited as we are in our jurisdiction to review the district court's denial of summary judgment, we accept its identification of a genuine dispute over whether Gabbert knowingly or recklessly included false statements in his warrant affidavit.

But *Franks* also requires the allegedly false statements to have been material to the finding of probable cause. We must "consider the faulty affidavit as if [the] errors [or] omissions were removed[,] . . . [and then] examine the 'corrected affidavit' and determine whether the probable cause for the issuance of the warrant survives the deleted false statements and material omissions."[18] After correcting the affidavit to exclude the challenged statements, the affidavit alleges that (1) on September 24, 2013, Gabbert met with Arizmendi, who stated that her signature had been forged on the grade change form and that she had previously filed a grievance against a school administrator for falsifying her signature; and (2) a Department of Public Safety handwriting analysis later determined that Arizmendi had signed her own name on the form.

It is unclear whether Gabbert argues on this appeal that once the contested allegations are excised from his warrant affidavit, the affidavit supports probable cause for the "false alarm or report" offense for which Arizmendi was arrested.[19] To the extent that he does, we disagree. As relevant here, a critical element of the "false alarm or report" offense is that the defendant have initiated or circulated a false report of an "offense" or

---

[18] *Winfrey*, 901 F.3d at 495.

[19] In oral argument, for example, Gabbert's counsel conceded that it was "obvious" that Gabbert should not have sought to arrest Arizmendi for "false alarm or report" under Texas Penal Code § 42.06 rather than "false report" under § 37.08. Gabbert also appears to admit in his briefing that at least some of the challenged statements were "misleading" and that he should have sought a warrant under § 37.08.

"emergency" that would ordinarily cause official action.[20] Excising the statements that Arizmendi "initiat[ed] and communicat[ed] a report that [she] knew was 'false and baseless'" and that the report "caused BISD Police Investigators to seize several public school computers and documents for forensic reviews," it is difficult to see how the remaining allegations established probable cause for the specific offense of "false alarm or report."[21]

## IV

Gabbert's primary defense is that even if the corrected warrant affidavit did not establish probable cause for the "false alarm or report" offense, he had probable cause to arrest Arizmendi without a warrant for a *different* offense. He suggests that there was probable cause that Arizmendi had committed the lesser offense of "false report" under Texas Penal Code § 37.08, which states that "[a] person commits an offense if, with intent to deceive, he knowingly makes a false statement that is material to a criminal investigation and makes the statement to . . . a peace officer." As we have explained, Gabbert also alleged in his affidavit that Arizmendi told him in September 2013 that she had not signed the grade change form, and later handwriting analysis refuted her claim.[22] We agree that this was sufficient to generate probable cause that

---

[20] *See* Tex. Pen. Code § 42.06.

[21] The offense of "false alarm or report" does not require a showing that the report *actually* caused official action. But the only suggestion in Gabbert's affidavit that Arizmendi had circulated a report that "would ordinarily" cause official action comes from the false statements that Arizmendi's report caused the BISD police investigation. Without those allegations, the affidavit could not establish probable cause for the offense, even though it alluded to a grievance Arizmendi had filed and her later statement to Gabbert that she had not signed the grade change form.

[22] Arizmendi does not contest these statements.

Gabbert argues that the extent of his misconduct, if any, was that he inadvertently cited the incorrect section number—in other words, he meant to cite section 37.08, and instead cited section 42.06. As we have explained, the district court determined that Gabbert made other false statements. It also suggested that Arizmendi had raised a genuine factual dispute over whether Gabbert's accusation that Arizmendi violated the "false alarm or report" offense in section 42.06 was knowing or reckless. The court observed that "false alarm

Arizmendi violated § 37.08's "false report" offense when she met with Gabbert.[23]

The critical question is therefore whether an officer who knowingly or recklessly included false statements on a warrant affidavit can be held liable for false arrest despite having had probable cause to arrest the plaintiff without a warrant for a different offense not identified in the affidavit, an argument with great force. This said, the principle was not clearly established at the time of Gabbert's alleged conduct, so Gabbert is entitled to qualified immunity.

**A**

In *Vance v. Nunnery*,[24] we suggested that an officer could not evade liability in such circumstances. While investigating Vance for the April 5, 1995 burglary of a storage facility, Nunnery, a police detective, also received information suggesting that Vance had burglarized the same facility on March 10 of that year.[25] Although Nunnery learned shortly after obtaining a warrant to arrest Vance for the April 5 burglary that Vance could not have committed that crime, he arrested Vance regardless.[26] When Vance sued under § 1983 for

---

or report" is a more serious offense punishable by a longer prison sentence, and that Gabbert's affidavit closely tracked the elements of the "false alarm or report" offense. Here too, we lack jurisdiction to review the district court's identification of a genuine factual dispute.

[23] The Supreme Court has established that in general, a claim for false arrest cannot lie in the failure to obtain a warrant for the arrest, at least for offenses committed in the arresting officer's presence. *See Virginia v. Moore*, 553 U.S. 164, 176 (2008) ("We conclude that warrantless arrests for crimes committed in the presence of an arresting office are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections."). To be clear, the issue here is not whether Gabbert could have arrested Arizmendi without a warrant. It is whether once he obtained a warrant, potentially in violation of *Franks*, he could retroactively justify a warrant-based arrest by claiming that he could have instead conducted a warrantless arrest based on facts stated in the affidavit.

[24] 137 F.3d 270 (5th Cir. 1998).

[25] *Id.* at 271–73.

[26] *Id.*

violation of his Fourth Amendment rights, Nunnery offered a defense strikingly similar to the one Gabbert presents in this case: he "argued that he was entitled to qualified immunity, not because he met the constitutional requirements for arresting Vance for the April 5th burglary [for which Vance was actually arrested], but because he had arguable probable cause to arrest Vance for a 'related offense'—a burglary that he believed occurred . . . on March 10th."[27]

Nunnery's defense relied on the "related offense" doctrine, which established that while a police officer could generally not obtain qualified immunity for a warrantless arrest by claiming that he could have validly arrested the plaintiff for a different offense, he was entitled to immunity where the charged and uncharged offenses were "related" and the officer demonstrated "arguable probable cause" to arrest the plaintiff for the uncharged related offense.[28] We had relied on the related offense doctrine for decades prior to *Vance*.[29] In doing so, we made clear that we would not "indulge in *ex post facto* extrapolations of all crimes that might have been charged on a given set of facts at the moment of arrest[, since] . . . [s]uch an exercise might permit an arrest that was a sham or fraud at the outset, really unrelated to the crime for which probable cause was actually present[,] to be retroactively validated"—hence the requirement that where the charged and uncharged offenses did not match, they at least be related.[30]

We concluded that Nunnery was not entitled to claim the protection for related offenses because "[u]nlike every police officer who has successfully invoked the related offense doctrine, Nunnery did not make a warrantless

---

[27] *Id.* at 273.

[28] *Id.* at 274.

[29] *See United States v. Atkinson*, 450 F.2d 835, 838–39 (5th Cir 1971) (citing *Mills v. Wainwright*, 415 F.2d 787 (5th Cir. 1969)).

[30] *Id.* at 838.

arrest[, but instead] arrested Vance on the basis of an arrest warrant that he knew was no longer supported by probable or arguable probable cause."[31] In short, we declined in *Vance* to extend the related-offense defense to warrant-based arrests. This approach recognized that the primary role of the related offense doctrine was to strike a "compromise" between forcing officers making warrantless arrests to routinely charge arrestees with every possible offense "to increase the chances that at least one charge would survive the test for probable cause,"[32] at one extreme, and allowing officers to justify "sham or fraudulent arrests on the basis of ex post facto justifications that turn out to be valid,"[33] at the other. In contrast, allowing an officer to invoke the related offense doctrine when justifying a warrant-based arrest "would unjustifiably tilt this balance in favor of qualified immunity" because "[a] police officer who obtains an arrest warrant and then intentionally arrests someone he knows to be innocent should not benefit from a doctrine designed to protect police officers from civil liability for reasonable mistakes in judgment made when they effect warrantless arrests for conduct they believe is criminal based on their observations or 'first-hand knowledge.'"[34]

While *Vance* is not the only relevant authority on this issue, it is the clearest voice in our circuit on the relationship between an invalid warrant and a warrantless arrest for a different offense. In a series of pre-*Vance* and pre-*Franks* cases, we had suggested that a warrant-based arrest was lawful if the officer had probable cause to make a warrantless arrest, even if the warrant

---

[31] *Id.* Though we held in the alternative that Nunnery lacked probable cause even to arrest Vance for the alleged March 10 burglary, *Vance*, 137 F.3d at 276–77, this does not diminish the force of our holding that the related offense doctrine did not extent to warrant-based arrests. *See, e.g., Perez v. Stephens*, 784 F.3d 276, 281 (5th Cir. 2015) (per curiam) (discussing the binding force of alternative holdings).

[32] *Vance*, 137 F.3d at 275 (quoting *Trejo v. Perez*, 693 F.2d 482, 485 (5th Cir. 1982)).

[33] *Id.* (quoting *Gassner v. City of Garland*, 864 F.2d 394, 398 (5th Cir. 1989)).

[34] *Id.*

itself was invalid.[35] These cases did not implicate the same principles as *Vance* and this case. Some involved arrests based on faulty warrant affidavits that could later be justified by pointing to probable cause for the *same* offense identified in the warrant;[36] another addressed an apparent clerical error that led a warrant to cite the wrong section of the United States code.[37] In contrast, *Vance* dealt directly with the question of whether an officer could make an arrest based on a warrant that he should have known was invalid, then claim the protection shed by the related offense doctrine. We do not take *Vance* to be in tension with this line of cases, but rather to be an interpretation of the related offense doctrine that predated them.

In sum, *Vance* rejected the possibility that an officer could arrest someone based on a warrant and then, on its challenge, retroactively justify his conduct by arguing that he had probable cause to arrest the person without a warrant for a different offense. Taking the disputed facts in the light most favorable to Arizmendi, that is exactly what Gabbert has done.

To be sure, *Vance* differs from this case in certain ways. It did not involve a *Franks* violation, but rather a violation of the separate principle that an officer cannot arrest someone for an offense of which the officer knows the person to be innocent. Further, Gabbert include facts in his warrant affidavit that would arguably support probable cause for the other offense, while no such

---

[35] *See United States v. Francis*, 487 F.2d 968, 971–72 (5th Cir. 1973) (holding that the sufficiency of a warrant affidavit was "immaterial" where the arrest would have been valid without a warrant); *United States v. Morris*, 477 F.2d 657, 662–63 (5th Cir. 1973) ("[I]t does not necessarily follow from the fact that the arrest warrants were defective that the officers' entry into the apartment was unlawful . . . . A warrantless arrest is nevertheless valid if the arresting officer has probable cause to believe that the person arrested has committed or is in the act of committing a crime."); *United States v. Wilson*, 451 F.2d 209, 214–15 (5th Cir. 1971) ("A search incident to an arrest valid on one ground is not an illegal search merely because the arrest would be invalid if supported only by the faulty warrant.").

[36] *See Francis*, 487 F.2d at 971–72; *Morris*, 477 F.2d at 662–64.

[37] *See Wilson*, 451 F.2d at 214–15.

facts were included in the warrant affidavit in *Vance*. Neither of these differences, however, disturb the applicability of *Vance*'s underlying recognition that an officer who made an unconstitutional warrant-based arrest could not be spared from liability by the possibility that he could conduct a separate, warrantless arrest of the same arrestee—precisely what Gabbert argues here.

## B

Neither party addresses *Vance* or its parallels to this case. Rather, Gabbert relies upon *Devenpeck v. Alford*,[38] where police believed that a suspect had committed several offenses—including impersonating a police officer, lying to officers, and violating the State Privacy Act—but only arrested and charged him with an offense that was later established to be wholly unsupported by the facts.[39] The Court rejected the resulting § 1983 challenge, concluding that the warrantless arrest was valid so long as the officers had probable cause to arrest him for any crime based on the facts within their knowledge.[40] It did not matter whether the crime for which someone was arrested was "closely related" to other crimes for which there was probable cause to arrest—in other words, the related offense doctrine was too restrictive—because "[s]ubjective intent of the arresting officer . . . is simply no basis for invalidating an arrest."[41] Gabbert argues that *Devenpeck* squarely applies here: he arrested Arizmendi for one crime, but since he had probable

---

[38] 543 U.S. 146 (2004).

[39] *Id.* at 149.

[40] *Id.* at 153–56.

[41] *Id.* at 154–55; *see also id.* at 153 ("Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." (citations omitted)).

cause to arrest her for a different crime, it does not matter whether he committed *Franks* violations in the course of obtaining the arrest warrant.

The parties dispute whether *Devenpeck* applies solely to warrantless arrests, or also reaches warrant-based arrests. We, like other courts, have not explicitly addressed the reach of *Devenpeck* in circumstances like these.[42] After *Devenpeck*, but without addressing it explicitly, we characterized as "dubious" the argument that "an officer can give a knowingly false affidavit and avoid liability by the fortuity that, after the fact, he may be able to argue some other basis for the arrest."[43] We have since acknowledged the possibility that *Devenpeck* may be limited to warrantless arrests, though we have not offered

---

[42] Relying on *Devenpeck*, the Eleventh Circuit has suggested that probable cause for a warrant-based arrest is an absolute bar to a false arrest claim even when the arresting officer lacked probable cause for "all announced charges." *See Elmore v. Fulton Cty. Sch. Dist.*, 605 F. App'x 906, 914–17 (11th Cir. 2015) (per curiam) (ultimately affirming the dismissal of a false arrest claim on grounds that did not implicate this principle). Conversely, after *Devenpeck* was decided but without mentioning the case, the Sixth Circuit drew a line between warrant-based and warrantless arrests similar to the one we drew in *Vance*: where "an officer is confronted with a rapidly developing situation and makes the on-the-scene determination to arrest someone in the reasonable-but-mistaken belief that the arrestee committed a crime whose elements, it turns out later, were unmet though the arrestee's conduct did satisfy the elements of a different crime," the error is "in no small part technical: [the officer] is correct in believing the arrestee susceptible to arrest, and mistaken only as to which crime the arrestee committed." *See Kuslick v. Roszczewski*, 419 F. App'x 589, 594 (6th Cir. 2011). Such an officer, the Sixth Circuit held, "is in a thoroughly different position than . . . [one] who, from a position of safety and retrospective deliberation, decides to falsify details of the arrestee's conduct in a sworn statement made to a magistrate in order to obtain authorization for a retaliatory arrest." *Id.*

Several circuits have also held that an officer who relies on a facially invalid warrant is exempt from false arrest liability as long as there was probable cause to arrest the person *for the offense identified in the warrant. See Graves v. Mahoning County*, 821 F.3d 772, 775–77 (6th Cir. 2016); *accord Noviho v. Lancaster County*, 683 F. App'x 160, 164–65 (3d Cir. 2017); *Robinson v. City of South Charleston*, 662 F. App'x 216, 221 (4th Cir. 2016). But these cases did not decide whether the offense identified in the warrant must match the offense for which there was probable cause to make an arrest. *Cf. Goad v. Town of Meeker*, 654 F. App'x 916, 922–23 (10th Cir. 2016) (citing *Graves* for the proposition that the court could look to facts outside the warrant to establish probable cause, but also explaining that the plaintiff "would have to show that the Defendants lacked probable cause to support the *charged crime* against him" (emphasis added)).

[43] *DeLeon v. City of Dallas*, 345 F. App'x 21, 23 n.2 (5th Cir. 2009) (per curiam).

further analysis.[44] There are two reasons, however, to doubt that *Devenpeck* applies here.

First, *Devenpeck* applies with significantly more force in the warrantless arrest context. The Court expressed concern over ways in which probing an officer's mental state could lead to "haphazard" results—an arrest's validity might hinge on whether it was made by a rookie or a veteran officer knowledgeable about the law; perhaps more troublingly,  the arresting officer may have an incentive not to provide grounds for a warrantless arrest to avoid the risk that the stated grounds would fail to withstand scrutiny even though other potential grounds might have succeeded.[45] These concerns have little force with arrests based on warrants, where officers are called upon to identify both the offense and the facts that ground probable cause. Nor do warrant-based arrests involve the snap judgments attending warrantless arrests—so similar leniency may be undue an officer arresting with an unconstitutionally invalid warrant.[46]

Indeed, the Court's identification of the related offense doctrine's potential drawbacks meshes with the distinction we drew in *Vance* between warrantless and warrant-based arrests. As we have explained, *Vance* held that an officer was not entitled to the limited protection of the related offense doctrine when conducting a warrant-based arrest; the related offense doctrine was crafted to provide protection only for officers conducting warrantless arrests, lest they be forced to proactively identify every possible offense the arrestee may have committed. While *Devenpeck* held that the validity of a warrantless arrest should not be limited by an insistence that the officer have

---

[44] *See, e.g.*, *Johnson v. Norcross*, 565 F. App'x 287, 289–90 (5th Cir. 2014) (per curiam).

[45] *Devenpeck*, 543 U.S. at 155–56.

[46] *See Vance*, 137 F.3d at 275–76 (explaining the practical differences between warrantless and warrant-based arrests); *Kuslick*, 419 F. App'x at 594 (same).

probable cause for the charged offense or related offenses, it did not disturb our previous recognition that allowing an officer conducting an improper warrant-based arrest to point to another offense for which there was probable cause would "unjustifiably tilt [the balance of protection] in favor of qualified immunity."[47]

Second, and relatedly, *Devenpeck* hinged on the requirement that we distance ourselves from an arresting officer's subjective state of mind, focusing solely on the objective facts known to the officer at the time. Yet *Franks* explicitly requires inquiry into officers' states of mind to assess the validity of arrest warrants. Only deliberate or reckless misstatements or omissions are *Franks* violations; mere negligence will not suffice.[48] This stands in stark contrast to the Supreme Court's emphasis on objectivity surrounding warrantless arrests.

## C

Today we cannot conclude that an officer can deliberately or recklessly misstate or omit facts in a warrant affidavit to procure a warrant to arrest someone for a specific crime, then escape liability by retroactively constructing a justification for a warrantless arrest based on a different crime. That said, overarching and reconciling principles bring clarity.

*Franks* and *Devenpeck* operate in tandem by protecting the validity of an arrest in circumstances where the arrest does not deny a person the protections of the Fourth Amendment—in these circumstances, the mental state of the officer aside, the arrest is lawful. In warrantless arrests, there is no threat to a citizen's Fourth Amendment rights where the officer had probable cause to arrest, albeit not for the offense he chose to charge. With a warrant, even where

---

[47] *Vance*, 137 F.3d at 275.
[48] *See Franks*, 438 U.S. at 171.

there was ultimately no probable cause for the arrest, an officer instead gains the protection of *Franks*—invalidating the warrant only for misstatements willfully or recklessly made, and then only for misstatements necessary to the finding of probable cause for the charged offense.

As of Gabbert's conduct, we had not yet explained this common ground between warrantless and warrant-based arrests—let alone established that these principles do not mandate further protection for an officer who arrests someone based on a *Franks*-violating warrant, then later points to probable cause to have effected a warrantless arrest for another offense. A reasonable officer in Gabbert's position may not have recognized that by proceeding with an arrest based on a warrant, the validity of the arrest would not be judged by standards applicable to warrantless arrests, standards he could have met. In short, one could have reasonably taken *Devenpeck* to protect the validity of Arizmendi's arrest, even if—based on the facts in the light most favorable to Arizmendi—Gabbert should have known that the warrant itself was invalid under *Franks*.

Knowing or reckless false statements in a warrant affidavit are not to be condoned. But Arizmendi has not persuaded us that Gabbert's actions were then illicit by clearly established law. Gabbert is therefore entitled to qualified immunity.

## V

The judgment of the district court is reversed.