**NOT RECOMMENDED FOR PUBLICATION**
File Name: 11a0222n.06

No. 10-1082

**FILED**

*Apr 11, 2011*

LEONARD GREEN, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| CHERYL ROSE KUSLICK, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JAMES ROSZCZEWSKI, Michigan State | ) | EASTERN DISTRICT OF MICHIGAN |
| Police, in his individual capacity, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:    KEITH, MERRITT, and MARTIN, Circuit Judges.

MERRITT, Circuit Judge.  The plaintiff in this case, Cheryl Rose Kuslick, claims that the defendant, Michigan State Police Trooper James Roszczewski, fabricated a claim in a sworn affidavit that she frustrated the execution of a search warrant in order to obtain a warrant for her arrest on the charge of obstruction.  Roszczewski maintains that he is immune from suit under the doctrine of qualified immunity, though he was denied summary judgment on that ground in the court below after the district court concluded the resolution of that question depended on facts that needed to be resolved by a jury.  He now brings to our court an interlocutory appeal, claiming even if he did lie in the affidavit, that lie was not material — as a matter of law.  We disagree, and **AFFIRM**.

**I.[1]**

In March 2008, someone wrote "I want to blow up the school" on the wall of a bathroom stall at Hale High School in Hale, Michigan. Defendant Roszczewski was assigned to the investigation. In May 2008, he obtained a search warrant for handwriting samples from Plaintiff Kuslick's nineteen-year-old daughter, Sarah. The warrant itself did not specify the number of samples required; but the affidavit in support, sworn by Roszczewski, stated that he had learned from a member of the police's crime lab that "at least thirty handwritten printed samples" of "I want to blow up the school" in Sarah's handwriting would be needed for analysis.

Soon after the warrant was issued, Kuslick, her husband, and Sarah appeared at the East Tawas Police Post for the purpose of Sarah's compliance with the warrant. Kuslick feared Sarah, who is developmentally disabled, would be coerced into a false confession. She expressed concern about leaving her daughter alone in the room where the handwriting samples would be collected, but was instructed she must remain outside the room; she was, however, initially informed that she could remain in the hallway nearby where she could see and hear what was going on. However, another trooper soon instructed her to go around the corner from the hallway; she refused, stating that she wanted to monitor the events occurring with her daughter. Around ten minutes later, a different trooper, Lieutenant Robert J. Lesneski, rushed towards her and ordered her to leave the building. She refused this order, telling

---

[1]This matter is before the court on an appeal from a denial of Roszczewski's motion for summary judgment, and so the following factual account resolves any of this case's disputed facts in favor of Kuslick, the non-movant. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) (describing the qualified immunity inquiry as being determined from facts "[t]aken in the light most favorable to the party asserting the injury").

Lesneski "you need to back away from me, you reek of alcohol" and that she would "leave the building as soon as [her] daughter [was] finished."

Meanwhile, Sarah had been in the room with Roszczewski, who was personally executing the search warrant by taking her handwriting samples. When he began taking the samples, he told Sarah he needed thirty samples, but, after she completed thirty, he asked her for some extras, "just in case"; she complied. As Sarah was completing these extra samples, she saw Lesneski "grabbing" and "shoving" Kuslick, and heard Lesneski tell Kuslick that she had to leave and Kuslick reply that she would leave when Sarah was finished. Sarah then made eye contact with her mother and said, "It is ok mom, I gave him more than he asked for." Roszczewski then said, "It's ok, you're done." As the Kuslick family was leaving the station, Kuslick and Lesneski continued to argue, and Lesneski "pulled and pushed" Kuslick towards the door. Sarah heard Lesneski say to her mother, "I will make you disappear."

Roszczewski then filed a criminal complaint and applied for a warrant for the arrest of Kuslick. He contended she obstructed him in the performance of his duties, a felony, in violation of Michigan Compiled Laws § 750.81d(1). In identical language, the complaint and warrant both allege that Kuslick "did assault, batter, wound, resist, obstruct, oppose or endanger James Roszczewski, a police officer of the Michigan State Police that the defendant knew or had reason to know was performing his or her duties." Roszczewski also filed a sworn affidavit, styled as a Statement in Support of Complaint for Warrant. In it, Roszczewski alleged: (1) that Kuslick interfered with his investigation by not following an order from one Sergeant Gronda (apparently the trooper who told her to go around the corner); (2) that Kuslick refused two requests from Lesneski to leave the post; and (3) "[t]hat [Roszczewski]

required one hundred hand writing samples and only obtained forty, because [Kuslick] ordered her daughter to leave with her not giving the amount of samples required, violating the search warrant." A magistrate approved the warrant, and Kuslick was then arrested in her home. According to Kuslick's other daughter, Katy, who was present at Kuslick's arrest, one of the arresting officers, when asked by Kuslick why she was being arrested, responded: "You called my commander a drunk. What do you think you're being arrested for?"

After a preliminary examination, the obstruction charge against Kuslick was dismissed in a brief order by Judge Allen C. Yenior of the Michigan District Court for the County of Iosco. The order stated: "It is the finding of the Court that, whereas the search warrant had been complied with under its terms, [Kuslick] did not obstruct the service of execution of the search warrant when she told her daughter to leave the State Police Post."

Kuslick then instituted the present action under 42 U.S.C. § 1983, in which she claims wrongful arrest and malicious prosecution in violation of the Fourth Amendment, and retaliatory prosecution in violation of the First Amendment (arguing that her prosecution was retaliation for her First-Amendment-protected accusation that Lesneski had been drinking). Roszczewski moved for summary judgment on the basis of qualified immunity. The district court denied that motion, and he now brings this interlocutory appeal.

## II.

Roszczewski claims on appeal that, even assuming the truth of Kuslick's factual allegations — as he must for this court to retain jurisdiction over this interlocutory appeal, *see McKenna v. City of Royal Oak*, 469 F.3d 559, 561 (6th Cir. 2006) — there remains no genuine issue of fact barring

summary judgment on the issue of qualified immunity. He maintains that the allegedly falsified statement — alleging that Kuslick frustrated the execution of the search warrant by ordering her daughter to leave before its completion — was not material. He argues that the reviewing magistrate would still have granted the warrant were Roszczewski's statement entirely to have omitted this claim, since there was freestanding probable cause for the obstruction charge, an offense with a broad definition under Michigan state law, based exclusively on her refusal of the other troopers' orders either to move around the corner or to leave the premises. We disagree. As explained below, the warrant by its own terms accused Kuslick of obstructing Roszczewski, not the other troopers, and the allegedly falsified statement constitutes the one factual allegation actually linking Kuslick to any obstruction of Roszczewski's execution of the warrant.

We review a district court's denial of qualified immunity de novo. *Holzemer v. City of Memphis*, 621 F.3d 512, 519 (6th Cir. 2010). Our circuit employs a three-step analysis in reviewing district court decisions concerning qualified immunity. We consider whether a constitutional violation occurred, whether that violation was of clearly established law, and whether the plaintiff has offered sufficient evidence to indicate what the official allegedly did was objectively unreasonable in light of the clearly established law. *Id.* The steps may be considered in any sequence. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, ___, 129 S. Ct. 808, 819 (2009)). We have recently framed the qualified immunity inquiry in cases alleging false statements in arrest warrants as requiring the plaintiff to establish (1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth, and (2) that the allegedly false or omitted information was material to the finding of probable cause. *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003). This standard is clearly

established.[2] *See Peet v. City of Detroit*, 502 F.3d 557, 570 (6th Cir. 2007) (noting that "the law is

clear" that officers may be held liable for false statements material to the finding of probable cause

supporting an arrest warrant). Assuming, for purposes of summary judgment, the truth of Kuslick's

allegations, the first *Vakilian* requirement is satisfied: she has made a substantial showing that

Roszczewski had in fact successfully executed the search warrant when the Kuslicks left the post, but

then fabricated an allegation that Kuslick kept him from acquiring a sufficient amount of handwriting

samples, which he numbered — for the first time when seeking a warrant for her arrest — at one

hundred.[3]

      This case turns on materiality, the second *Vakilian* requirement. Outside the context of qualified

immunity, this Court has held that the materiality of a false statement in a warrant application to the

magistrate's probable cause determination is a question for the jury. *See Hill v. McIntyre*, 884 F.2d

271, 276 (6th Cir. 1989) (holding that "whether the judicial officer issuing the warrant would have done

so even without the knowingly or recklessly false statement is one for the jury"). However, with respect

---

[2]Roszczewski irrelevantly argues in his brief that the law is not clearly established concerning whether "a police officer charged with collecting a sufficient amount of handwriting samples must stop at some minimum amount of exemplars." This argument assumes that Roszczewski had not finished collecting Sarah's handwriting samples when the Kuslicks left the post (i.e., that the sworn statement contained no falsehoods), a disputed fact outside of our jurisdiction to resolve.

[3]The district court in its opinion below noted that this showing consisted in more than Kuslick's affidavits. *See Kuslick v. Roszczewski*, No. 09-12307, 2009 WL 5171803 at * 8 (Dec. 23, 2009) ("In addition to the evidence emphasized by Plaintiff, Defendant's police report ("needs thirty samples") varies from his affidavit requesting the search warrant ("at least thirty handwritten printed samples"), which varies from his testimony [at the preliminary examination in the criminal proceedings brought against Kuslick] ("if you could get 80 to 100 that would be better"), which also varies from his affidavit in support of the warrant for Plaintiff's arrest.").

to qualified immunity, we held in *Vakilian* the issue of materiality is one for the court. *Vakilian*, 335 F.3d at 517 (distinguishing *Hill* and holding that "[w]here qualified immunity is asserted, the issue of probable cause is one for the court"). The question, then, is whether probable cause existed based on Roszczewski's affidavit supporting his application for the arrest warrant, if we set aside the allegedly false representation and focus only on the two other allegations in the statement, the truth of which Kuslick concedes: that she violated orders from other troopers.

Roszczewski contends that Kuslick's conceded refusal to comply with the two orders constituted probable cause to believe that she had committed the obstruction offense as defined by Michigan law. He relies on Michigan Compiled Laws § 750.81d, which makes it a crime to "obstruct . . . a person who the individual knows or has reason to know is performing his or her duties" and further defines "obstruct" to include "a knowing failure to comply with a lawful command." He argues that Kuslick violated this provision, entirely apart from any allegation that she frustrated the search warrant's execution, when she refused the commands of the two other troopers to move around the corner or leave the post immediately. Thus, the argument goes, by including allegations to that effect in his affidavit in support of the arrest warrant, he provided sufficient probable cause for a magistrate to issue the arrest warrant wholly independent from the allegedly falsified statements alleging the frustration of the search warrant's execution. As Roszczewski puts it in his brief, he "had probable cause to believe that [Kuslick] was obstructing any one of three troopers: F/Lt. Lesneski, Sgt. Gronda, and [Defendant]."

We are unpersuaded that a magistrate would have found probable cause if the only allegations in support of the warrant were Kuslick's refusal to move around the corner or leave the post when she was asked by troopers other than Roszczewski. The face of the warrant and the complaint identically

allege that Kuslick, "contrary to law, did . . . obstruct . . . James Roszczewski, a police officer of the Michigan State Police that the defendant knew or had reason to know was performing his or her duties, contrary to MCL § 750.81d(1)." Roszczewski alleged that *he* — not the other troopers — was obstructed in violation of the law by Kuslick. Assuming, as we must for purposes of this appeal, that the search warrant was successfully executed when Roszczewski told Sarah he was done collecting samples and the Kuslicks left the post, Roszczewski was never obstructed under any definition of "obstruct" in Michigan law, and the fact that other troopers may have been is immaterial to the charge.[4] The one aspect of the statement in support of the warrant providing a nexus between Kuslick's conduct and Roszczewski was the allegedly falsified allegation that Kuslick frustrated Roszczewski's collection of a sufficient number of handwriting samples. Accordingly, we cannot say as a matter of law that this allegation was not material.

Roszczewski has one attempt at an answer to this line of reasoning, and we reject it. Citing an inapposite case, he argues that even if probable cause for the crime charged is not present, "proof of probable cause to arrest the plaintiff for a related offense is also a defense which may entitle the arresting officer to qualified immunity." *Avery v. King*, 110 F.3d 12, 14 (6th Cir. 1997). But *Avery* involved an unlawful arrest claim arising out of a warrantless arrest, *id.* at 13, whereas Kuslick's claims arise out of an arrest pursuant to a warrant procured through alleged falsifications. There is good reason

---

[4]Our conclusion in this regard is confirmed by the state court's approach to the issue. In the criminal case brought against Kuslick, the court twice cut off as irrelevant a line of questioning regarding Kuslick's noncompliance with the other troopers' orders, commenting that Kuslick was "not charged with a felony of disrupting [troopers other than Roszczewski]" and that those allegations had "no bearing on whether she was resisting, obstructing Lieutenant Roszczewski."

to treat qualified immunity differently in these distinct contexts. In warrantless arrest cases such as *Avery*, an officer is confronted with a rapidly developing situation and makes the on-the-scene determination to arrest someone in the reasonable-but-mistaken belief that the arrestee committed a crime whose elements, it turns out later, were unmet, though the arrestee's conduct did satisfy the elements of a different crime. *See id.* at 14-15. The officer's mistake in the *Avery* case is in no small part technical: he is correct in believing the arrestee susceptible to arrest, and mistaken only as to which crime the arrestee committed. That officer is in a thoroughly different position than the one here (again, resolving the disputed facts in Kuslick's favor), who, from a position of safety and retrospective deliberation, decides to falsify details of the arrestee's conduct in a sworn statement made to a magistrate in order to obtain authorization for a retaliatory arrest. *Cf. Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007) (justifying a distinction in this respect between warrantless false arrest and malicious prosecution claims). Telling lies to a magistrate in order to concoct probable cause is no technical violation of the law, and qualified immunity surely does not require us to countenance such behavior, if indeed a jury concludes that is what occurred here.

**III.**

For the foregoing reasons, the district court's denial of summary judgment is **AFFIRMED**.