NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0529n.06

No. 21-3202

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

JOETTE PEROLI; JUSTIN PEROLI,

    Plaintiffs-Appellants,

v.

GREGORY HUBER, Director of Law; TOM
MILLER, Sheriff; MATTHEW LINSCOTT,
Lieutenant; JAMES KIOUSIS, Sergeant;
BENJAMIN TAYLOR, Deputy; MICHAEL
NORRIS, Deputy; COUNTY OF MEDINA,
OHIO; JOHN/JANE DOES 1–5; CITY OF
MEDINA, OHIO; MEDINA COUNTY
SHERIFF'S DEPARTMENT

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Nov 19, 2021
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO

OPINION

Before: GUY, COLE, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Joette Peroli filed a citizen complaint against officers who escorted her out of a local courthouse. After the sheriff's department investigated Ms. Peroli's citizen complaint, City Prosecutor Gregory Huber authorized the filing of a criminal complaint against her for filing a false report, resulting in a warrant for her arrest. Ms. Peroli alleges that her treatment at the courthouse and during her arrest caused debilitating problems with her existing post-traumatic stress disorder (PTSD). Ms. Peroli and her husband sued Huber, the Medina County Sheriff's Office, Medina County Sheriff's officers, and the City of Medina. The Perolis asserted § 1983 claims for First Amendment retaliation and false arrest, Fourth Amendment false arrest and excessive force, Title II of the Americans with Disabilities Act, and municipal

liability claims. They also alleged state law claims of conspiracy, false arrest, malicious prosecution, intentional/negligent infliction of emotional distress, and loss of consortium. The district court granted judgment on the pleadings in favor of the City of Medina and Huber on the federal claims asserted against them and later granted summary judgment in favor of all defendants on the remaining claims. We **AFFIRM** the district court's judgment.

## I. BACKGROUND

### A. Factual Background

#### 1. Ms. Peroli's Visit to the Courthouse

Ms. Peroli came to the Medina County courthouse to testify in a friend's divorce proceeding. She was waiting in the lobby to be called as a witness when she observed an altercation between a lawyer and her friend's grandmother who was sitting nearby. Ms. Peroli decided to tell the lawyer "to leave the woman alone." The lawyer responded by yelling at Ms. Peroli. Because of the commotion, a court administrator said that no one was permitted to speak in the lobby. When Ms. Peroli continued to speak, Deputy Paul Demko was told to escort Ms. Peroli from the courthouse. She claims that Deputy Demko then "grabbed" her arm to "pull" her "out of the lobby." Ms. Peroli says that she flinched and "immediately informed" Deputy Demko that she has PTSD, and asked that Deputy Demko "stop touching" her. Ms. Peroli says that Deputy Demko did not stop touching her and "tugged on [her] arm and pulled [her] towards the hallway." When Deputy Demko followed her out of the waiting area, Ms. Peroli claims that he touched her again "in the hallway outside the lobby," and that he "just kept touching" her. When Deputy Demko and Ms. Peroli arrived at the elevator, they met Sergeant James Kiousis. As Ms. Peroli and the Deputy waited for the elevator, Deputy Demko instructed her to take the stairs instead. Sergeant Kiousis escorted Ms. Peroli down the stairs and out of the building. As Ms. Peroli took the stairs down, she asserts that an officer behind her touched her.

The record contains the courthouse surveillance videos and Deputy Demko's body camera footage, which reveal many inconsistencies with Ms. Peroli's account of the incident. While in the courthouse waiting room, Deputy Demko was talking with Ms. Peroli when he pointed toward the exit. Ms. Peroli grabbed her belongings and stood up. As she walked past Deputy Demko, he put his hand near her shoulder on the back of her right arm. When Ms. Peroli moved away from Deputy Demko, he removed his hand. The videos show that was the only time an officer touched Ms. Peroli during the incident.

### 2. Ms. Peroli's Report of the Courthouse Incident and Charges

Shortly after the incident, Ms. Peroli went to the Medina County Sheriff's Department. She met with Sergeant Todd Heckel and filed a written complaint against Deputy Demko and Sergeant Kiousis. Lieutenant Matthew Linscott was assigned to investigate her complaint. As part of his investigation, he reviewed Ms. Peroli's complaint, the courthouse surveillance video, and the body cameras of Deputy Demko, Sergeant Kiousis, and Sergeant Heckel. Lieutenant Linscott set up a meeting with Ms. Peroli to discuss her allegations, but Ms. Peroli did not show up. He attempted to reschedule the meeting on multiple occasions, but Ms. Peroli did not return his calls.

Lieutenant Linscott found "stark differences" between Ms. Peroli's account of the incident in her citizen complaint and the video footage. For example, the video footage shows that the officers did not touch her multiple times. Linscott then assigned Sergeant Kiousis to investigate the incident and write a report "to determine if he believed criminal charges were appropriate against [Ms. Peroli] for making a false citizen's complaint." Lieutenant Linscott says that he never discussed the possibility of filing criminal charges against Ms. Peroli with Huber.

For Sergeant Kiousis' investigation, he reviewed Ms. Peroli's complaint and the body camera footage from Sergeant Heckel, himself, and Deputy Demko, and sent his report to Huber.

Ohio Revised Code § 2921.15(B) makes it unlawful for a person to "knowingly file a complaint against a peace officer that alleges that the peace officer engaged in misconduct in the performance of the officer's duties if the person knows that the allegation is false." Ohio Rev. Code § 2921.15(B). A violation of § 2921.15 is a first-degree misdemeanor. *Id.* § 2921.15(C).

Huber reviewed the courthouse surveillance footage, Kiousis's report, body camera footage, and Ohio Rev. Code § 2921.15. Huber sent a letter to Kiousis authorizing a single charge against Ms. Peroli for violating Ohio Rev. Code § 2921.15(B). After finding out that Huber authorized a criminal charge, Lieutenant Linscott instructed Sergeant Kiousis to file the "Summons-Warrant on Complaint" and an affidavit with the Clerk of the Medina County Municipal Court. The "Summons-Warrant on Complaint" authorized the issuance of a summons in lieu of arrest.

### 3. Ms. Peroli's Arrest

After Lieutenant Linscott received the warrant, he gave it to Sergeant Heckle to assign to deputies. Sergeant Heckel assigned Deputies Benjamin Taylor and Michael Norris to execute the warrant. Taylor's body camera, which included audio, reveals the following. When Ms. Peroli answered the door, she stepped outside per Taylor's request. He told Ms. Peroli that she was under arrest for making a false complaint and asked her to turn around and place her hands behind her back. Ms. Peroli informed Deputy Taylor that she suffers from PTSD and that she needed her medication and shoes.

After the arrest, Deputy Norris walked Ms. Peroli toward the deputies' vehicles. Deputy Taylor then asked Ms. Peroli for permission to open the front door to call for her husband to get the items that she requested. Ms. Peroli granted permission to do so. Deputy Taylor informed Mr. Peroli that Ms. Peroli was under arrest and that she needed her medication.

After Deputy Taylor received the medication and while Ms. Peroli was kneeling on the grass near the curb, she exclaimed that she was having a panic attack and that she needed an ambulance. Although Deputy Taylor initially responded, "that's not how this works," he called an ambulance within a minute. While they waited for the ambulance, Deputies Taylor and Norris lifted Ms. Peroli by her arms up into the vehicle as she screamed. When the ambulance arrived, the Emergency Medical Service personnel asked the deputies if it was necessary to keep Ms. Peroli handcuffed. Deputy Taylor resisted removing the handcuffs at first, but eventually agreed to remove Ms. Peroli's handcuffs. Ms. Peroli never asked to have her handcuffs removed.

During the ambulance ride to the hospital, Ms. Peroli continued to experience emotional distress. When they arrived at the hospital, Deputy Taylor told Ms. Peroli that she was no longer being arrested, but she needed to report to court instead and gave her the summons. Later, the court dismissed the criminal charge against Ms. Peroli. The Perolis claim that the municipal court "dismissed Peroli's prosecution on the grounds that no probable cause existed." The court, however, reasoned that Ms. Peroli's conduct in filing a citizen complaint did not constitute criminal conduct under § 2921.15(B). The court explained that a motion to dismiss "tests only the sufficiency of the Complaint without regard to the quantity or quality of evidence that might be produced at trial by either the State of Ohio or the Defendant." The court made no reference to a probable cause determination.

## B. Procedural Background

The Perolis sued several defendants in federal court. Their amended complaint has allegations against two groups of defendants: the City of Medina and Huber (City Defendants);

and Medina County, Medina County Sheriff's Department,[1] Medina County Sheriff Tom Miller, Medina County Sheriff's Department Captain Kenneth Baca,[2] Medina County Sheriff's Department Lieutenant Matthew Linscott, Medina County Sheriff's Department Sergeant James Kiousis, Medina County Sheriff's Department Deputies Benjamin Taylor and Michael Norris, and John/Jane Does 1–5 (County Defendants). All officials were sued in their individual and official capacities. County Defendants made a mistake in their answer regarding whether Taylor and Norris arrested Ms. Peroli in retaliation for her filing a civilian complaint and moved to correct this mistaken admission. The court denied the motion on the basis that County Defendants had not established good cause to allow the amendment.[3]

The Perolis alleged various § 1983 federal claims against City Defendants: violations of the First, Fourth, and Fourteenth Amendment rights (Count 1) and municipal liability against the City of Medina (Count 4). The Perolis also alleged various federal claims against County Defendants: violations of the First, Fourth, and Fourteenth Amendments for false arrest, excessive force, and retaliation (Count 2); municipal liability against Medina County (Count 3); and violation of Title II of the Americans with Disabilities Act (Count 5). Finally, the Perolis alleged state law tort claims against all the defendants: conspiracy (Count 6), intentional/negligent infliction of

---

[1] Caselaw indicates that the Medina County Sheriff's Department cannot be sued under Ohio law. *Petty v. Cnty. of Franklin*, 478 F.3d 341, 347 (6th Cir. 2007) ("[U]nder Ohio law, a county sheriff's office is not a legal entity capable of being sued for purposes of § 1983."); *see also Carmichael v. City of Cleveland*, 571 F. App'x 426, 435 (6th Cir. 2014) (citing cases); *see Lake v. Bd. of Cnty. Commissioners of Clark Cnty.*, No. 3:18-CV-143, 2020 WL 1164778, at *3 (S.D. Ohio Mar. 11, 2020) (finding that claims against Sheriff's Department fail because "it is not a legal entity capable of being sued"). Dismissal of claims against the Medina County Sheriff's Department would have been appropriate on this basis, but it does not appear this argument was raised below.

[2] The Perolis dismissed Captain Baca from the suit.

[3] Noting that County Defendants denied every other allegation in the amended complaint, the district court addressed County Defendants' contention of mistaken admission, considered that factual issue, and ruled that the evidentiary record contradicts the argument that County Defendants conceded retaliation.

emotional distress (Count 7), false arrest (Count 8), malicious prosecution (Count 9), and loss of consortium (Count 10).

City Defendants moved for judgment on the pleadings. The district court granted the motion regarding the Perolis' federal claims against City Defendants, leaving only state law claims against them. City Defendants then moved for summary judgment on the state law claims remaining against them. County Defendants also moved for summary judgment on both the federal and state law claims against them. The district court decided that it was appropriate to exercise supplemental jurisdiction over the remaining state law claims against City Defendants, *Peroli v. Huber*, No. 1:19-CV-1755, 2021 WL 308102, at *12 (N.D. Ohio Jan. 29, 2021), and the district court granted both motions. The Perolis timely appealed.

## II.   ANALYSIS

The court will address City Defendants' Motion for Judgment on the Pleadings on the federal claims and the summary judgment motions in turn.

### A.     City Defendants' Motion for Judgment on the Federal Claims

We review a district court's grant of judgment on the pleadings de novo, "accepting [Plaintiffs'] plausible allegations as true and drawing all reasonable inferences in his favor." *Hudson v. City of Highland Park*, 943 F.3d 792, 798 (6th Cir. 2019). In this category of federal claims, we address Huber's individual capacity claims and the municipal liability claims against the City of Medina.

#### 1.  Individual Capacity Claims Against Huber

The district court determined that Huber is entitled to absolute immunity on the basis that the amended complaint did not allege any facts indicating that Huber "participated in any kind of activity that might fall outside of his role as an advocate in initiating and prosecuting the state's

case against Ms. Peroli." *Peroli v. Cnty. of Medina*, No. 1:19-CV-1755, 2020 WL 2405354, at *13 (N.D. Ohio May 12, 2020).

When a prosecutor is performing the functions of an advocate rather than investigator, a prosecutor is protected by absolute immunity. *Kalina v. Fletcher*, 522 U.S. 118, 126–27, 131 (1997). The Supreme Court in *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976) held that a prosecutor has immunity from civil suit under § 1983 when "initiating a prosecution and in presenting the State's case." A prosecutor's initiation and pursuit of a criminal prosecution are "intimately associated with the judicial phase of the criminal process, and thus [are] functions to which the reasons for absolute immunity apply with full force." *Id.* at 430. The *Imbler* Court "did not attempt to define the outer limits of the prosecutor's absolute immunity." *Kalina*, 522 U.S. at 125. So, the Court did not consider "whether like or similar reasons require immunity for those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate." *Imbler*, 424 U.S. at 430–31.

Over time the Court has "'revisited and refined' its prosecutorial immunity jurisprudence." *Watkins v. Healy*, 986 F.3d 648, 661 (6th Cir. 2021) (quoting *Rouse v. Stacy*, 478 F. App'x 945, 947 (6th Cir. 2012)). This refinement has led courts to determine that prosecutors are performing as advocates in certain situations. *Id.* at 661. For example, they are acting as advocates when they are "knowingly using false testimony and suppressing material evidence," preparing for trial by "evaluating evidence and interviewing witnesses," "participating in a probable cause hearing," "preparing and filing . . . the information and motion for an arrest warrant," and "making statements at a preliminary examination about the availability of a witness." *Id.* (brackets omitted) (collecting cases). On the other hand, prosecutors are performing as investigators "when giving 'legal advice to the police'" in situations such as: when they give "legal advice prior to the

existence of probable cause"; before "[the prosecutor's] determination that she would initiate criminal proceedings against [a defendant]"; and when "directing the [police's] investigation . . . prior to the initiation of judicial proceedings and without probable cause." *Id.* (citations omitted). The prosecutor, as the one seeking immunity, "bears the burden of showing that such immunity is justified for the function in question." *Id.*

The Perolis argue that Huber's conduct is not protected by absolute prosecutorial immunity because he functioned as an investigator "when he failed to determine probable cause or when he encouraged Kiousis to initiate prosecution." They assert that Huber's authorization of the criminal complaint "did not form any part of his preparation to initiate prosecution." Their focus is on Huber's conduct before Kiousis filed the criminal complaint because "[h]e made no decision to prosecute and sought no warrant." But a close review of the amended complaint reveals that the Perolis' argument is inconsistent with their allegations.

The amended complaint alleged that Huber should be held responsible for authorizing and actively prosecuting Ms. Peroli. Accepting their allegations as true, it is not plausible that Huber's acts were administrative or investigative. "A prosecutor's decision to initiate a prosecution, including the decision to file a criminal complaint or seek an arrest warrant, is protected by absolute immunity." *Howell v. Sanders*, 668 F.3d 344, 351 (6th Cir. 2012). The Perolis claim that Huber "faciliat[ed]," "authorized," and "actively prosecuted" the filing of the criminal complaint against Ms. Peroli. These allegations show that Huber was functioning as an advocate rather than an administrator or investigator.

Regarding the Perolis' argument that Huber gave Sergeant Kiousis legal advice,[4] the Perolis do not address the district court's conclusion that they waived this argument because they contended in their district court briefing that Huber did not give legal advice to Sergeant Kiousis. *Peroli*, 2020 WL 2405354, at *12 n.10. The argument, therefore, is waived.

Based on the pleadings, Huber is entitled to absolute immunity on the federal claims.

### 2. Municipal Liability Claims Against the City of Medina

The Perolis also sued Huber in his official capacity. A claim against a government official in his official capacity functions as a claim against the municipality. *Essex v. Cnty. of Livingston*, 518 F. App'x 351, 354 (6th Cir. 2013). The district court dismissed the claims against the City of Medina on the basis that their allegations were insufficient to state a municipal liability claim under *Monell*. *Peroli*, 2020 WL 2405354, at *16; *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978).

The City of Medina argues on appeal that the district court correctly determined that the amended complaint failed to assert a *Monell* claim against it. The Perolis state in their reply brief that they voluntarily waived their *Monell* claims against the City of Medina.

The district court did not err in granting City Defendants' Motion for judgment on the pleadings regarding the Perolis' federal claims because Huber is entitled to absolute immunity and Plaintiffs have abandoned their municipal liability arguments against the City of Medina.

---

[4] On appeal the Perolis claim that "Huber denies he provided legal advice to Kiousis regarding Peroli." They also assert that "Huber denies his memo to Kiousis contained legal advice regarding Peroli and also denies acting in concert with him to initiate prosecution." First, the request for admissions and Huber's deposition are outside the pleadings on which the district court properly relied to resolve the motion for judgment on the pleadings. Second, City Defendants' answer to the amended complaint must be taken in the context of the record, as the district court did when it resolved County Defendants' claim of mistaken admission. The Perolis also say City Defendants admit in their answer that "[Sergeant] Kiousis prepared, executed and filed a false criminal complaint and false affidavit." On the contention of the mistake, *see supra* note 3. In any event, a prosecutor has broad immunity. *Cady v. Arenac Cnty.*, 574 F.3d 334, 340 (6th Cir. 2009) ("But courts will bar § 1983 suits arising out of even unquestionably illegal or improper conduct by the prosecutor so long as the general nature of the action in question is part of the normal duties of a prosecutor.") (collecting cases).

**B.     Motions for Summary Judgment**

We review a grant of summary judgment de novo. *Stolle v. Kent State Univ.*, 610 F. App'x 476, 482 (6th Cir. 2015). Summary judgment is proper when the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

1.     County Defendants' Motion for Summary Judgment on the Federal Claims

The Perolis allege federal false arrest, excessive force, and retaliation claims against County Defendants (Count 2). They also bring municipal liability claims (Counts 3 and 4). The Perolis assert that County Defendants violated Title II of the Americans with Disability Act (Count 5), and allege conspiracy by all of the defendants (Count 6). These claims are brought under § 1983, which "provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464, 478 (6th Cir. 2014) (quoting *Filarsky v. Delia*, 566 U.S. 377, 383 (2012)).

The Perolis appeal the district court's grant of qualified immunity to County Defendants on their false arrest, excessive force, retaliation claims (Count 2) and their false arrest and malicious prosecution claims (Counts 8 and 9). *See Peroli*, 2021 WL 308102, at *7. Their opening brief argues only the state law malicious prosecution claim, and does not mention the federal malicious prosecution claim. Thus, the federal malicious prosecution claim is forfeited. *See, e.g.*, *United States v. Montgomery*, 998 F.3d 693, 697-99 (6th Cir. 2021); *Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018).

Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages" when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982). The plaintiff "bears the burden of overcoming the qualified immunity defense." *Thompson v. City of Lebanon*, 831 F.3d 366, 369 (6th Cir. 2016). A plaintiff must show that an official's conduct "(1) violated a constitutional right that (2) was clearly established." *Hart v. Hillsdale Cnty.*, 973 F.3d 627, 635 (6th Cir. 2020).

### a. Fourth Amendment False Arrest Claim

The Fourth Amendment protects citizens from "unreasonable searches and seizures" and requires warrants to be issued "upon probable cause." U.S. CONST. amend. IV. "A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 243–44, n.13 (1983). Our precedent establishes that "[a]n arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment made pursuant to § 1983." *Robertson v. Lucas*, 753 F3d 606, 618 (6th Cir. 2014) (quoting *Voyticky*, 412 F.3d at 677). Therefore, based on this warrant defense, to succeed on their false arrest claim, the Perolis must undercut the validity of the warrant by showing, "by a preponderance of the evidence," that to obtain the warrant, the defendants "'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood' and 'such statements or omissions [we]re material, or necessary, to the finding of probable cause.'" *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (alterations in original) (quoting *Wilson v. Russo*, 212 F.3d 781, 786–87 (3d Cir. 2000)). In applying this standard, "[i]f the affidavit contains false statements or material omissions, we set aside the statements and include the information omitted in order to determine whether the affidavit is still sufficient to establish probable cause." *Id.*

The Perolis argue first that the state court's dismissal of the criminal charge against Ms. Peroli is a determination that probable cause did not exist and, therefore, res judicata precludes County Defendants from arguing otherwise. "Res judicata 'preclude[s] parties from contesting matters that they have had a full and fair opportunity to litigate.'" *Arangure v. Whitaker*, 911 F.3d 333, 337 (6th Cir. 2018) (alteration in original) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). "State-court judgments are given the same preclusive effect under the doctrines of res judicata and collateral estoppel as they 'would receive in courts of the rendering state.'" *Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011) (quoting *ABS Indus., Inc. ex rel. ABS Litig. Trust v. Fifth Third Bank*, 333 F. App'x 994, 998 (6th Cir. 2009)). "Under Ohio law, the doctrine of res judicata encompasses two related concepts: claim preclusion and issue preclusion." *Moore v. Hiram Twp.*, 988 F.3d 353, 357 (6th Cir. 2021).

While the Perolis do not explicitly say it in their briefing, it appears they argue issue preclusion. "We look 'to the state's law to assess the preclusive effect it would attach to that judgment.'" *Boggs*, 655 F.3d at 519 (quoting *ABS Litig. Trust*, 333 F. App'x at 998).

Under Ohio law, issue preclusion "prevents the relitigation of any fact or point that was determined by a court of competent jurisdiction in a previous action between the same parties or their privies [,] even if the causes of action differ." *Boggs*, 655 F.3d at 520 (alteration in original) (quoting *Doe ex rel. Doe v. Jackson Local Schs. Sch. Dist.*, 422 F. App'x 497, 500 (6th Cir. 2011)). While "we have described the elements of Ohio issue-preclusion law, sometimes using a three-part test and other times a four-part test," *CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 490 (6th Cir. 2021), "we do not think the different tests establish different rules" *Id.* at 491. Most relevant here is whether the issue was "'actually' and 'necessarily' litigated in the prior case (meaning that the

court resolved the issue and that its resolution was essential to the judgment rather than dicta).” *Id.*

The state court did not make a probable cause determination. It merely held that “the criminal Complaint in this case does not state a criminal offense” because the criminal complaint did not “allege that the Defendant filed a criminal Complaint in any court having proper jurisdiction over such a charge.” In other words, the court found the complaint insufficient because it did not set out “an offense under the criminal law of the State of Ohio.” The court’s determination that dismissal was warranted is different than a determination that there is probable cause, which requires “a probability or substantial chance of criminal activity.” *Wesby*, 138 S. Ct. at 586 (quoting *Gates*, 462 U.S. at 243–44, n.13). Thus, res judicata does not apply.

Next, the Perolis argue that it was error for the district court to extend the related charge doctrine for the purpose of finding probable cause for Ms. Peroli’s arrest. The “related charge” or “related offense” doctrine arises when a related charge or offense can serve as a basis for probable cause where probable cause did not exist to arrest the person for the crime charged. *Hopkins v. City of Westland*, 21 F.3d 427, 1994 WL 118116, at *4 (6th Cir. 1994) (unpublished); *Price v. City of Westland*, No. 92-CV-75604-DT, 1995 WL 871202, at *2 (E.D. Mich. Nov. 21, 1995). The district court noted that apparently “there was probable cause to charge Ms. Peroli with a violation of Section 2921.13(A)(3), which prohibits making a false statement to mislead a public official.”[5] *Peroli*, 2021 WL 308102, at *5. The district court relied on our reasoning in *Voyticky*, which recognized that where probable cause to arrest a plaintiff for a particular crime is lacking, but

---

[5] Ohio Rev. Code § 2921.13(A)(3) provides that “No person shall knowingly make a false statement, or knowingly swear or affirm the truth of a false statement previously made . . . with purpose to mislead a public official in performing the public official’s official function.”

"probable cause exists to arrest that plaintiff for a related offense, the plaintiff cannot prevail in a suit alleging wrongful arrest brought pursuant to 42 U.S.C. § 1983." 412 F.3d at 676.

The Perolis contend that we "expressly refused to extend the related charge doctrine to" arrest warrants in *Kuslick v. Roszczewski*, 419 F. App'x 589 (6th Cir. 2011). This is incorrect. *Kuslick* involved an officer who lied in an affidavit for an arrest warrant. *Id.* at 594. Based on *Avery v. King*, 110 F.3d 12, 14 (6th Cir. 1997), the officer argued that though he lacked probable cause for the charged crime, he did have probable cause for a related offense and so was entitled to qualified immunity. *Kuslick*, 419 F. App'x at 594. The court explained that *Avery* concerned a claim arising out of a warrantless arrest. *Id.* The court rejected the officer's argument, explaining that warrantless arrest cases (where an officer is faced with a quickly evolving situation and makes an "on-the-scene determination to arrest someone") are not the same as a case in which an officer has time to deliberate on the charges while seeking a warrant and "falsifies details in a sworn statement to obtain an arrest warrant." *Id. Kuslick* is therefore distinguishable. Sergeant Kiousis did not make false statements to obtain the warrant for Ms. Peroli's arrest and, contrary to the Perolis' assertion, *Kuslick* did not foreclose application of the related-charge doctrine to cases involving arrest warrants.

Our cases support this conclusion. "[K]nowledge of the precise crime committed is not necessary to a finding of probable cause provided that probable cause exists showing that a crime was committed by the defendants." *United States v. Anderson*, 923 F.2d 450, 457 (6th Cir. 1991); *see Halasah v. City of Kirtland,* 574 F. App'x 624, 631 (6th Cir. 2014) (holding that "[e]ven if we assume that there was not probable cause to arrest Halasah for Disorderly Conduct, there was probable cause to arrest Halasah for Obstructing Official Business" where the plaintiff was arrested pursuant to an arrest warrant for disorderly conduct).

Applying our precedent to this case, we ask whether probable cause existed under Ohio law. The district court concluded that it appears there was probable cause under Ohio Rev. Code § 2921.13(A)(3). In any event, there was probable cause under Ohio Rev. Code § 2921.15. The Perolis argue that Sergeant Kiousis' criminal complaint and affidavit relied on "reckless, false material statements and omissions of law and fact" to establish probable cause. His probable cause affidavit identified five claims by Ms. Peroli in her citizen complaint that showed that she filed a false complaint:

(1) Deputy Demko grabbed [Ms. Peroli] and pulled her into the waiting room.
(2) A deputy pushed [Ms. Peroli] in the hallway.
(3) As [Ms. Peroli] entered the stairwell a Deputy pushed her in the back.
(4) A Deputy pushed [Ms. Peroli] as she was going down the stairs.
(5) As [Ms. Peroli] was exiting the stairwell a Deputy put his hand on her back and told her to go that way.

Ms. Peroli does not argue that she did not make those statements in her citizens complaint, but does argue that "Kiousis failed to inform the clerk that Peroli enjoyed a well-established right to file a misconduct complaint, that her complaint was unsworn, and that it was not filed as required." The Perolis do not point to anything in the record that shows that Sergeant Kiousis omitted any information "knowingly and deliberately" or "with a reckless disregard for the truth." The Perolis have not shown that informing the clerk of the law was Sergeant Kiousis' responsibility or that it was material to this case. The record, moreover, shows that Lieutenant Linscott set an appointment to meet with Ms. Peroli concerning her complaint and to show her the videos, but she failed to attend and did not respond to the officer's follow-up requests to schedule a meeting.

To be sure, in *City of Akron v. Davenport*, No. 21552, 2004 WL 199830, at *3 (Ohio Ct. App. Feb. 4, 2004), the Ohio court found that giving a tape-recorded statement to a detective accusing an arresting officer of misconduct, with no further action, was not filing a complaint under Ohio Rev. Code § 2921.15. *See State v. McCaleb*, No. CA2009-01-002, 2009 WL 4810429,

at *4 (Ohio Ct. App. Dec. 14, 2009) ("McCaleb faxing his letter and allegation form cannot be considered filing a complaint of officer misconduct. Having found that the letter and form are insufficient to constitute a complaint as is required under R.C. 2921.15, we find the evidence insufficient to support McCaleb's conviction."). Even if the *Davenport* court is correct, *but see Ohio v. Hanson*, 143 N.E.3d 1178, 1187 (Ohio Ct. App.2019), "County Defendants relied on their good faith belief, after three separate levels of investigative review, that Ms. Peroli's actions provided probable cause for a charge under the statute." *Peroli*, 2021 WL 308102, at *5. No reasonable jury would find that Kiousis's affidavit contained "false statements or omissions that create[d] a falsehood." *Sykes*, 625 F.3d at 305 (alteration in original).

Additionally, the Perolis incorrectly claim that "the arrest warrant is also void because it was not issued by a detached, neutral magistrate, but by an official of the executive branch (Kiousis)." The warrant, however, was issued by a deputy clerk with the court and "Ohio law expressly permits a clerk of court to issue an arrest warrant." *Gooden v. City of Brunswick*, No. 1:12-CV-2918, 2014 WL 1379528, at *9 (N.D. Ohio Apr. 8, 2014).

Applying our caselaw to this record, the district court did not err in granting summary judgment to County Defendants on the Perolis' Fourth Amendment False Arrest claim.

### b. Fourth Amendment Excessive Force Claim

An excessive force claim "in the context of an arrest or investigatory stop of a free citizen" is best characterized as invoking Fourth Amendment protections. *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Marshall v. City of Farmington Hills*, 693 F. App'x 417, 424 (6th Cir. 2017) ("Where an excessive force claim arises in the context of an arrest, it is analyzed under the Fourth Amendment and its reasonableness standard.").

Courts consider whether the force was "objectively reasonable." *Graham*, 490 U.S. at 397. "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts

and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). For this claim, the Perolis bear the burden of proof to show that County Defendants used excessive force, or to show that the force used was unreasonable under all the circumstances. *Miller v. Taylor*, 877 F.2d 469, 472 (6th Cir. 1989). Some non-exclusive factors to consider that bear on whether the force was reasonable include: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).

Rather than addressing the totality of the circumstances, the Perolis claim that "[a]ny and all force against Peroli was excessive as there was no probable cause to support arrest." Although the Perolis' argue that the deputies should have issued the summons in the first place instead of arresting her, the decision to arrest Ms. Peroli or issue the summons was at the discretion of the arresting officer, which was undertaken in accordance with governing law, as explained above. Because the deputies could make an arrest, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. The body camera footage shows that the deputies used the minimum force necessary to execute the arrest warrant. The video evidence shows that the deputies' actions involved placing the handcuffs on Ms. Peroli, lifting her into the cruiser in the

middle of her panic attack, wiping her nose, and removing the handcuffs. It also shows that Ms. Peroli never complained about the handcuffs. The amount of force that the deputies used was not excessive. The district court did not err in granting summary judgment to County Defendants on the Perolis' Fourth Amendment excessive force claim.

### c.   First Amendment Retaliation Claim

To succeed on a First Amendment retaliation claim, the Perolis must show that (1) Ms. Peroli "engaged in protected conduct; (2) an adverse action was taken against [her] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by [Ms. Peroli's] protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

The Perolis' claim fails at the first element: Ms. Peroli did not engage in protected conduct. To be sure, filing a citizen complaint is a protected activity. *Rudd v. City of Norton Shores*, 977 F.3d 503, 513–14 (6th Cir. 2020). But "the First Amendment does not protect a person who tells knowing or reckless lies or takes threatening actions." *Id.* at 514. The surveillance video from the waiting room and body camera footage show that Ms. Peroli's citizen complaint was based on several falsehoods. Despite requests from County Defendants, Peroli refused to meet with County Defendants and to view the video evidence that clearly contradicted her citizen complaint. The district court did not err in granting summary judgment to County Defendants on the Perolis' First Amendment retaliation claim.

### d.   Municipal Liability Claims

The Perolis' claim that the Medina County Sheriff's Office has a policy of criminally charging people that file misconduct complaints. They also contend that Medina County failed to train its employees in several ways: it failed to "seek legal review of its policy," did not train its

employees "concerning citizens' rights to petition [the] government" or on the Americans with Disabilities Act, and it failed to "stay abreast of the law governing [Ohio Rev. Code] § 2921.15."

"Municipalities are not subject to respondeat superior liability in § 1983 actions; rather, they are responsible only for injuries caused by those acts that may fairly be said to represent official policy or by their policies or customs." *North v. Cuyahoga Cnty.*, 754 F. App'x 380, 386 (6th Cir. 2018). "In addition to demonstrating an underlying constitutional violation, '[a] plaintiff bringing a § 1983 claim against a municipality must . . . identify the policy or custom that caused her injury.'" *Id.* (alteration in original) (quoting *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008)). "An additional theory of municipal liability is based on a municipality's failure to adequately train or supervise its employees." *Id.* To be liable for failure to train, the municipality's training and supervision must be "inadequate for the tasks the [employees] were required to perform, the inadequacy resulted from [the municipality's] deliberate indifference, and the inadequacy actually caused, or is closely related to, [the plaintiff's] injury." *Id.* (alterations in original) (quoting *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 738 (6th Cir. 2015)).

The Perolis claim that Ms. Peroli's First Amendment right was violated but, as we explained above, filing a complaint telling knowing or reckless lies is not protected conduct. Thus, the Perolis have not demonstrated an underlying constitutional violation for their *Monell* claims.

### e. *Reasonable Accommodation Claim under the ADA[6]*

The Perolis' claim that Ms. Peroli was entitled to a reasonable accommodation of service of the summons in lieu of arrest under the ADA and that Medina County and the responsible officers denied her that accommodation. But Ms. Peroli did not request any accommodation,

---

[6] County Defendants argue that the Perolis' claim is barred because she only alleges it against the Medina County and the Medina County Sheriff's Department. The Court construes the Peroli's amended complaint as alleging an ADA claim against the individual County Defendants as well.

which she must to assert an ADA reasonable accommodation claim. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Assuming its applicability, to state a claim of failure to accommodate, the Perolis needed to show that Ms. Peroli requested an accommodation. *See Burns v. Coca-Cola Enterprises, Inc.*, 222 F.3d 247, 258 (6th Cir. 2000).

In the body cam footage, when Deputy Taylor informs Ms. Peroli that she is under arrest, Ms. Peroli tells him that she has PTSD and he needs "to be very careful." After she is read her *Miranda* rights, she requests shoes and informs Deputy Norris that she has PTSD and that she has not had her medication yet. Deputy Norris responded, "We'll grab that too." When she begins to have her panic attack, she exclaims to the deputies that "I need you to get my doctor!" and "I need you to call the ambulance!" During the arrest, Ms. Peroli never asked to have the handcuffs removed. She also never requested service in lieu arrest. On this record, the district court did not err in granting summary judgment to County Defendants on the Perolis' reasonable accommodation claim.

### f. Federal Conspiracy Claim

To show a federal conspiracy claim, a plaintiff must show "that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy that caused the injury." *Jackson v. City of Cleveland*, 925 F.3d 793, 817 (6th Cir. 2019) (quoting *Robertson*, 753 F.3d at 622), *cert. denied sub nom. City of Cleveland v. Jackson*, 140 S. Ct. 855 (2020). A plaintiff "cannot succeed on a conspiracy claim [when] there was no underlying constitutional violation that injured [the plaintiff]." *Wiley v. Oberlin Police Dep't*, 330 F. App'x 524, 530 (6th Cir. 2009).

As previously discussed, the Perolis have not shown an underlying constitutional violation. Thus, County Defendants are entitled to judgment as a matter of law on the Perolis' federal conspiracy claim (Count 6).

        2.   County Defendants and City Defendants' Motion for Summary Judgment on State Law Tort Claims

The Perolis brought state law claims of conspiracy (Count 6), intentional/negligent infliction of emotional distress (Count 7), false arrest (Count 8), malicious prosecution (Count 9), and loss of consortium (Count 10) against all defendants. County Defendants and the City of Medina argue that they are entitled to statutory immunity. Huber asserts that he is entitled to absolute immunity on the state law tort claims alleged against him. We begin with whether Ohio Political Subdivision immunity applies to the City of Medina, Medina County, and the individual County Defendants. We then address whether Huber is entitled to prosecutorial immunity on the state law tort claims remaining against him.

*a. State Law Tort Immunity*

Ohio Rev. Code § 2744 governs immunity from tort liability for political subdivisions and their employees. The Perolis bring state law claims against both the City of Medina and Medina County. To determine whether a political subdivision is immune from liability, Ohio courts use a three-tiered analysis. *Lambert v. Clancy*, 927 N.E.2d 585, 588 (2010). Under the first tier a general grant of immunity is provided: "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." *Id.* (quoting Ohio Rev. Code § 2744.02(A)(1)). The second tier "focuses on the five exceptions to this immunity" listed in Ohio Rev. Code § 2744.02(B). *Id.* If an exception is applicable, thereby exposing the political subdivision to liability, the third tier of the

analysis "assesses whether any of the defenses to liability contained in [Ohio Rev. Code §] 2744.03 apply to reinstate immunity." *Id.*

The parties agree that statutory immunity applies to the City of Medina and Medina County unless an exception applies. The Perolis do not argue that any exceptions apply under the second tier of analysis. Thus, they have not demonstrated any dispute of material fact regarding the City of Medina or Medina County's immunity. The City of Medina and Medina County are entitled to judgment as a matter of law on all state tort claims against them, which includes conspiracy (Count 6), intentional/negligent infliction of emotional distress (Count 7), false arrest (Count 8), malicious prosecution (Count 9), and loss of consortium (Count 10). The district court properly granted summary judgment to the City of Medina and Medina County on these claims.

The individual County Defendants (Miller, Linscott, Kiousis, Taylor, Norris) claim that they are also entitled to statutory immunity. "Immunity is also extended to individual employees of political subdivisions." *Lambert*, 927 N.E.2d at 588. But the three-tiered analysis is not used for claims against individual employees. *Id.* "Ohio law provides state employees immunity unless they act 'with malicious purpose, in bad faith, or in a wanton or reckless manner.'" *Wilson v. Gregory*, 3 F.4th 844, 860 (6th Cir. 2021) (quoting Ohio Rev. Code § 2744.03(A)(6)(b)). "[A]llegations of negligence are insufficient to overcome the immunity granted to an employee of a political subdivision who acts within his or her official duties." *Lambert*, 927 N.E.2d at 588. On the evidentiary record before us and based on the pleadings, the actions of the individual defendants that the Perolis identify, read in their favor, point only to negligence. On these issues, the Perolis fail to point to anything in the record that creates a genuine dispute of material fact. Because the Perolis have not shown that the individual County Defendants acted "with malicious purpose, in bad faith, or in a wanton or reckless manner," they are entitled to judgment as a matter

of law on all state law claims against them. *Wilson*, 3 F.4th at 860 (quoting Ohio Rev. Code § 2744.03(A)(6)(b)).

### b. *Absolute Immunity for Huber*

Huber argues that he is entitled to absolute immunity on the state law tort claims asserted against him. "The Ohio rules governing prosecutorial immunity mirror the federal rule." *Beckett v. Ford*, 384 F. App'x 435, 452 (6th Cir. 2010). "A prosecutor's absolute immunity is similarly subject to the same restrictions: 'absolute immunity does not extend to a prosecutor engaged in essentially investigative or administrative functions.'" *Id.* (quoting *Willitzer v. McCloud*, 453 N.E.2d 693, 695 (Ohio 1983)). As explained above, the pleadings and the record show that Huber was instead acting as an advocate. Ohio courts apply this distinction from *Imbler*. Therefore, Huber is entitled to absolute immunity and judgment as a matter of law on the state law tort claims asserted against him.

### III. CONCLUSION

For the reasons stated above, the court **AFFIRMS** the district court's grant of judgment on pleadings in favor of City Defendants on the federal claims asserted against them. The court **AFFIRMS** the district court's grant of summary judgment in favor of all defendants on the remaining claims.